*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DYLAN MICHAEL BERGER,

Defendant-Appellant.

UNPUBLISHED
October 23, 2025
1:07 PM

No. 366038
Menominee Circuit Court
LC No. 2022-004409-FC

Before: SWARTZLE, P.J., and ACKERMAN and TREBILCOCK, JJ.

PER CURIAM.

Defendant was convicted at trial of assault by strangulation, MCL 750.84(b), and domestic violence, MCL 750.81(2). Defendant now appeals his conviction, arguing the prosecutor committed a constitutional error by questioning defendant on his post-*Miranda*[1] silence. We affirm.

In January 2022, defendant and his girlfriend were sleeping at defendant's residence. The girlfriend woke up when she heard defendant screaming in another room. Defendant then came into the room where the girlfriend was on the bed and began hitting her in the face. He then dragged her into the bathroom while choking her until the girlfriend eventually became unconscious. When the girlfriend woke up, she ran from the house to call the police. Defendant, while still in the house, shot himself in the face and then was taken to the hospital. He made no statements to the police before going to the hospital, at the hospital, or after he was released.

Defendant was charged with assault and voluntarily appeared for his arraignment where he was read his *Miranda* rights. After he was informed of his *Miranda* rights at his arraignment, defendant still did not provide any statements to the police. At trial, defendant testified that his girlfriend had attacked him and that he had acted in self-defense. On cross-examination, the

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

prosecutor asked defendant about his interactions with the police and why he did not tell them his side of the story:

> *Q.* When they came to arrest you, what am I being arrested for?
>
> *A.* They didn't come to arrest me, I appeared on February 3rd I believe it was, for arraignment.
>
> *Q.* Were there officers there at that time?
>
> *A.* I'm sure.
>
> *Q.* And, did you tell them what happened?
>
> *A.* I was not asked.
>
> *Q.* You didn't think that was important?
>
> *A.* I could barely walk, much less speak.
>
> *Q.* Could you write?
>
> *A.* Sure.
>
> *Q.* Why didn't you write your story? Why wouldn't you write your—write down what happened, according to you?
>
> *A.* I wasn't asked to—

Defense counsel then objected. The trial court asked the prosecutor if he was asking about the day defendant was arraigned, and the prosecutor answered, "Before he was arraigned." Defendant finished his sentence, saying, "I was never asked to, it didn't cross my mind." The jury convicted defendant of assault and domestic violence; he was sentenced to 38 months to 10 years for the strangulation conviction and 93 days for the domestic violence conviction.

On appeal, defendant argues that the prosecutor improperly questioned him about his silence after he was informed of his *Miranda* rights. This Court reviews de novo whether a defendant was improperly impeached with his silence. *People v Clary*, 494 Mich 260, 264; 833 NW2d 308 (2013). When a party raises a preserved constitutional error on appeal, "the reviewing court must determine whether the beneficiary of the error has established that it is harmless beyond a reasonable doubt." *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

A criminal defendant shall not be compelled in any criminal case to be a witness against himself. US Const, Am V; Const 1963, art 1, § 17. "[I]n order to protect the privilege against compelled self-incrimination during custodial police interrogations, the suspect must be warned that he has a right to remain silent [and] that any statement he does make may be used as evidence against him." *Clary*, 494 Mich at 265 (cleaned up); see also *Miranda*, 384 US at 444. A defendant's silence after being informed of his *Miranda* rights cannot be used to impeach, but the

use of prearrest silence to impeach does not violate the Fifth Amendment, nor the Michigan Constitution. *People v Cetlinski*, 435 Mich 742, 757; 460 NW2d 534 (1990).

Defendant argues that the prosecutor improperly questioned defendant on his silence after defendant was informed of his *Miranda* rights during his arraignment. It is clear, based on the questioning and the follow-up, that the prosecutor was asking defendant about his silence pre-arraignment and pre-*Miranda*. Defendant had testified that he was never arrested but instead appeared voluntarily for his arraignment. The prosecutor then asked questions about the events leading up to the arraignment: were police officers present at the arraignment, could defendant write, and why did defendant not write or tell his side of the story. The prosecutor's questioning was about why defendant never told police his side of the story before he was arraigned if defendant was truly acting in self-defense.

Although defendant's answers could be the same answers he would have given if asked about his post-arraignment, post-*Miranda* silence, the prosecutor clarified that he was asking about pre-arraignment. The prosecutor did not need to impeach using defendant's post-*Miranda* silence when his pre-*Miranda* silence also undermined his self-defense position. Simply put, defendant's argument is misplaced because the prosecutor did not question defendant about his post-*Miranda* silence and, therefore, there was no error because a defendant may be impeached by his prearrest silence. See *Cetlinski*, 435 Mich at 757. Because the prosecutor did not question defendant about his post-*Miranda* silence, there was no error, harmless or otherwise.

Affirmed.

/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman
/s/ Christopher M. Trebilcock